Oroville Montgomery v. Commissioner.
Montgomery v. Commissioner
Docket No. 10852.
United States Tax Court
1947 Tax Ct. Memo LEXIS 106; 6 T.C.M. (CCH) 983; T.C.M. (RIA) 47240; August 25, 1947
*106 Harold I. Cole, Esq., and Milton Levitan, Esq., for the petitioner. J. Frost Walker, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding seeks a redetermination of a deficiency for 1939 of $25,946.33 in income tax, together with penalty of $6,486.58, against petitioner as transferee. The broad issue relates to petitioner's liability as transferee of her husband, who executed an assignment of his interest in a judgment against his former employer on a salary contract. The assignment was executed in 1935 and payment was made in 1939. Findings of Fact Henry G. Montgomery, hereinafter sometimes referred to as the transferor, or the original taxpayer, was a party to a contract dated September 22, 1924, with the Realty Acceptance Corporation whereby he was employed as president of that corporation and the Stuyvesant Corporation (wholly owned by the Realty Acceptance Corporation) from the date of the contract to December 31, 1939, at a salary from October 1, 1924, to December 31, 1939, at the rate of $25,000 a year, payable in monthly installments. In December, 1926, the original taxpayer was removed from the presidency *107 of both corporations. He brought suit against the Realty Acceptance Corporation for breach of contract, and in 1939, through his attorneys, received payment in cash of $131,338.68. The lengthy litigation of this suit and its ramifications are reported as follows: "Realty Acceptance Corporation v. Montgomery (C.C.A., 3rd Cir.), 1930, 51 Fed. (2d) 636. "This was an affirmance per curiam of District Court judgment in transferor's favor, based on Montgomery's removal from the presidency in December, 1926, and non-payment of salary for the years 1927 to 1929, inclusive. The court held the measure of damage to be 'the contract price unpaid, less the sum if any shown in mitigation of damages.' Damages were found at $80,500. "Montgomery v. Realty Acceptance Corporation (C.C.A., 3rd Cir.), 1931, 51 Fed. (2d) 642. "This was decided a year later. The proceeding sought a new trial on further facts on mitigation of damage by Montgomery. It was held to be out of time and judgment was final. The judgment below was to stand as entered. "Realty Acceptance Corporation v. Montgomery 1932, 284 U.S. 547, 76 L. Ed. 476, 52 S. Ct. 215. "This *108 affirmed Circuit Court (above), which reinstated the original judgment. "Realty Acceptance Corporation v. Montgomery (D.C. Del.) 1934, 6 Fed. Supp. 593. "This was an injunction suit. It was held that equity would not enjoin judgment where defendant was remiss in making its original case. "Realty Acceptance Corporation v. Montgomery (C.C.A., 3rd Cir.), April 2, 1935, 77 Fed. (2d) 762. "This affirmed District Court, 6 Fed. Supp. 593. "Realty Acceptance Corporation v. Montgomery (296 U.S. 590, 80 L. Ed. 418, 56 S. Ct. 103), 1935. Rehearing denied, November 11, 1935. "This was a denial of certiorari. "Montgomery v. Realty Acceptance Corporation (D.C. Del.), 1936, 15 Fed. Supp. 665. "This was a bill for summary judgment against suretv on supersedeas appeal bond of $90,000. The motion was denied and the surety was held entitled to its day in court. "Montgomery v. American Employers' Insurance Company (D.C.Del.), 1938, 22 Fed. Supp. 476. "This contains a recital of the history of the case, noting: "Thereupon, on March 5, 1932, Realty Acceptance Corporation, defendant in the *109 judgment, filed a bill in equity in this court to restrain the plaintiff in the judgment from having execution for more than $14,918.13, and an order was entered for the issuance of a preliminary injunction. As a condition to the issuance of the injunction, the court, taking into consideration the original supersedeas bond of $90,000 that already stood as security for the judgment, required a bond in the sum of $10,000. American Employers' Insurance Company was again accepted as surety. May 10, 1934, this court dismissed the bill in equity and dissolved the preliminary injunction. Realty Acceptance Corp. v. Montgomery, D.C., 6 Fed. Supp. 593. On the same day Realty Acceptance Corporation moved for the restoration of the preliminary injunction pending appeal. Appeal was allowed, the court requiring an additional bond in the sum of $15,000 to cover any deficiency in the amounts that might be collected on the $90,000 and $10,000 bonds. The $15,000 bond was given with the United States Casualty Company as surety. The decree dismissing the bill of complaint was affirmed on appeal. Realty Acceptance Corp. v. Montgomery, 3 Cir., 77 Fed. (2d) 762. [April 2, 1935.] *110 "Part of the argument was that Montgomery was in contempt of court by reason of having made an assignment of $1,000 of the judgment to Continental Purchasing Company, contrary to the injunction in the equity suit. "Montgomery v. United States Casualty Co. Same as above. "American Employers' Insurance Co. v. Montgomery " United States Casualty Co. v. Montgomery (C.C.A., 3rd Cir.), 1939, 101 Fed. (2d) 1005 - rehearing denied, March 16, 1939. "This was an affirmance per curiam of the opinion below. "American Employers' Insurance Co. v. Montgomery " United States Casualty Co. v. Montgomery 307 U.S. 629, 83 L. Ed. 1512, 59 S. Ct. 833, 1939. "This was a denial of certiorari." The Industrial Finance Corporation held the majority of the stock of the Realty Acceptance Corporation. In 1939 the Industrial Finance Corporation paid $131,338.68 on the original taxpayer's claim against the Realty Acceptance Corporation. In 1943 a revenue agent in the course of an audit of the books of the Industrial Finance Corporation with respect to its income tax return for 1939 questioned the deduction of the $131,338.68 claimed on account of the payment. Further *111 investigation disclosed that it was paid to Ehlermann & Crawford, attorneys, for and on behalf of the original taxpayer in this proceeding. This was the first time that any knowledge of the receipt of income by the original taxpayer came to respondent. An inquiry of the original taxpayer did not elicit any information. On January 17, 1945, an attempt was made to secure payment of the tax from the original taxpayer, but petitioner advised that he was too ill to be seen. On January 19, 1945, further unsuccessful efforts were made to ascertain original taxpayer's financial position and to collect the tax. Similar efforts were made on January 31, 1945, and March 20, 1945. On March 28, 1945, a deputy collector learned by calling at the Montgomery residence that the original taxpayer had died March 22, 1945. On April 30, 1945, a call at the residence disclosed that petitioner was out of town, and the deputy collector was unable to find any administration of the original taxpayer's estate. In 1939 Ehlermann & Crawford, as has been stated, received on behalf of the original taxpayer the sum of $131,338.68, which was reduced by attorneys' fees and expenses to approximately $91,000. Pursuant *112 to assignments by the original taxpayer, Ehlermann & Crawford transferred to petitioner in 1939 the sum of $78,353.81 out of the $131,338.68. In making the transfer Ehlermann & Crawford complied with the provisions of the second "whereas" clause in the assignment from the original taxpayer to Lily D. Wooster, and the third "whereas" clause in the assignment by Lily D. Wooster to petitioner, as hereinafter recited. Petitioner and the original taxpayer were married in August, 1933. On April 24, 1935, an indenture was executed between original taxpayer and Lily D. Wooster, petitioner's mother. The agreement recited: "WHEREAS, the said Henry G. Montgomery did, on the first day of May, 1929, recover a judgment in the District Court of the United States for the District of Delaware, against Realty Acceptance Corporation for the sum of $80,500, which said judgment was duly filed and entered in the office of the Clerk of the District Court of the United States for the District of Delaware, on the 11th day of May, 1929; and "WHEREAS, the collection of said judgment has been restrained pending the final determination of an appeal therefrom by order of the said District Court, it being *113 understood that this assignment shall only become effective after the said injunction has been dissolved by order of the Court; "NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of the sum of $10 and other good and valuable considerations, the receipt whereof is hereby acknowledged, has sold and by these presents does sell, assign, transfer and set over unto the said party of the second part and to her executors, administrators and assigns, the said judgment and interest thereon, and any sum or sums of money that may be had or obtained by means thereof or on any proceedings to be had thereupon, subject to any prior assignments and to attorney's fees and disbursements heretofore incurred. "And the said party of the first part does hereby constitute and appoint the said party of the second part, her executors, administrators and assigns, his true and lawful attorney, irrevocable, with power of substitution and revocation for the use and at the proper cost and charges of the said party of the second part to ask, demand and receive and to issue execution and take all lawful ways for the recovery of the money due or to become due on the said judgment, *114 and on payment to acknowledge satisfaction or discharge the same and for said purpose to make and substitute one or more attorneys under him and at their pleasure to revoke said appointment or appointments, hereby ratifying and confirming all that said attorney or attorneys or substitute or substitutes shall lawfully do in the premises." There was no consideration for the assignment from the original taxpayer to his mother-in-law. She was merely an intermediary in the assignment from the original taxpayer to petitioner. On the same date, by a similar indenture, Lily D. Wooster assigned the judgment to petitioner. By reason of a recital of the assignment from the original taxpayer to Lily D. Wooster, the second "whereas" paragraph above quoted became the third "whereas" paragraph of the assignment to petitioner. Prior to the collection of the judgment, notice of the assignments was given to Ehlermann & Crawford and copies thereof were delivered to them. The assignments of the judgment to petitioner were to secure her loans and advances to the original taxpayer. Petitioner never asked the original taxpayer for a note, and kept no records of "advances." She never instituted proceedings *115 for non-support because she was married to him. The intention of the parties to the assignments was to transfer to petitioner whatever remained of the claim after the assignments to judgment creditors as of the date of the assignment and to place her ahead of any subsequent creditors of the original taxpayer. Between 1933 and December 31, 1939, petitioner expended nearly $100,000 for support and maintenance of herself and the original taxpayer. In 1933 petitioner was the owner of substantial amounts of jewelry insured in the sum of between $200,000 and $250,000. She had funds of her own and various checking and bank accounts. She was the owner of a home of twenty-six to twenty-eight rooms in Manhasset, Long Island, New York, on which the real estate taxes amounted to $1,300 per year. Four servants were employed in the home; and two automobiles were maintained. The cost of running the establishment was $25,000 to $30,000 a year, which petitioner paid. Between 1933 and 1939 she received the sum of $12,000 annually for the support and maintenance of her children by a former marriage. The children attended school at Andover and Todd Hunter. At the time of the assignments in 1935 petitioner *116 borrowed $15,000 from a New York bank, which she secured by a mortgage on her house. The money was expended on support and maintenance. The original taxpayer had a power of attorney on petitioner's bank accounts, and he signed checks on this account for the maintenance of the home and expenses. The transferor had prior to 1933 purchased shares of stock in a cooperative apartment at a cost of approximately $50,000, and spent approximately $50,000 for furnishings and paneling. He and petitioner occupied the apartment for a few months during the winters of 1935 and 1936, and some time thereafter they occupied it while the Long Island house was rented in the summer. Neither he nor petitioner ever got any money out of it, and petitioner did not think of it as an asset when she was questioned under oath in the office of the collector on June 6, 1942. The original taxpayer was not well enough to work. He was ill between 1935 and the date of his death. He was unemployed from 1933 to the date of his death in 1945. Petitioner paid all of his medical and hospital expenses. The original taxpayer had no taxable income in the years 1933 through 1938. He did not file an income tax return for *117 the taxable year ended December 31, 1939. From the time of his marriage to petitioner in 1933, the original taxpayer and petitioner sold and pawned various items belonging to either or both of them, including furnishings of the New York City apartment. The money thus obtained was used for living expenses. Some of the furnishings from the New York City apartment were taken to petitioner's residence in Manhasset in the late 1930's, where she sold some of them. At the time of the marriage the original taxpayer gave petitioner the furnishings of the New York City apartment. At the time of his death in December, 1945, the original taxpayer left no estate. He was indebted to certain judgment creditors in the amount of $10,000 to $12,000 in 1939. Such judgment creditors included Van Tine, Hotel Pierre, 4 E. 72nd Street Corporation, The Ritz-Carlton Hotel, and a tailor. The judgment creditors had pressed the original taxpayer for payment. The judgment creditors were paid out of the amount received on the judgment against Realty Acceptance Corporation. The original taxpayer realized at least $88,686.05 taxable income during the year 1939. In 1939 the original taxpayer was insolvent and *118 without means to discharge his income tax liability for that year. The transfers to petitioner of an interest in the judgment covered by the instruments of April 24, 1935, were completed transfers at that time for full and adequate consideration. Opinion The difficulties incident to a solution of the problem of petitioner's liability as a transferee for her husband's income tax stem in large part from the differences in concept of property and income under general law on the one hand and income tax law on the other. Cf. G. P. Fitzgerald, 4 T.C. 494. When a husband assigns income - especially if already earned - to his wife, the liability of the husband for the tax is a question - by now reasonably well settled - to be disposed of under income tax doctrines, and irrespective of the acquisition of incontrovertible property rights by the wife. But, as we understand petitioner's position, she makes no difficulties on that score, and in effect concedes her husband's liability for the uncollected tax. Now, at least when the tax has become due, respondent - or the United States - becomes a creditor of the taxpayer. Its right to the property transferred, as opposed to *119 petitioner's rights in the same property, now arises. These are questions of creditors' rights, and their decision under general legal and equitable principles - not peculiar to taxation - is evidently anticipated by the applicable legislation. [1]Weil v. Commissioner (C.C.A., 2nd Cir.), 91 Fed. (2d) 944. The fact that this court becomes the disposing agency, while authorized by the statute, is fortuitous. The question is of the type customarily dealt with by courts of general jurisdiction. Florence Pearlman, 4 T.C. 34, affirmed (C.C.A., 3rd Cir.), 153 Fed. (2d) 560; A. H. Graves, et al., 12 B.T.A. 124, 130. What then, if any, are the liabilities at law or in equity of this petitioner to her insolvent husband's creditors - including respondent? Like most questions in the law of insolvent estates, the principal aspects are priority and consideration. The United States may have acquired a lien, but not one that would take precedence over truly antecedent rights. Newman & Carey Subway Construction Co., 37 B.T.A. 1163; Internal Revenue Code, section 3672 *120 . But a gratuitous transfer by an insolvent might not create such a right or be valid as against bona fide creditors. On the score of priority we see little room for discussion. The assignment, for whatever it was worth, was executed, and we think intended to take effect, several years prior to the existence of any liability for taxes. See Newman & Carey Subway Construction Co., supra.If the assignment was valid when made, and particularly if it was effective as being supported by adequate consideration, the rights of creditors not then in existence could scarcely have been violated, see National Refining Co. v. United States (C.C.A., 8th Cir.), 160 Fed. (2d) 951, at least subsequent creditors whose claims are not based on an extension of credit in reliance on the debtor's apparent ownership. The decisive and dubious issue is this question of consideration. On that subject, analysis of the present facts and the general law must be rigorously severed. Respondent speaks throughout of a transfer without consideration made in 1939, the year of the actual receipt in cash of the income. That is also the burden of his pleadings. But it seems unquestionable that *121 the actual transfer, for whatever it was worth, took place in 1935. Its effectiveness is the only question. There is some suggestion that the parties did not intend the assignment to take effect until termination of all the litigation. This is based on the reference to a then-pending injunction. But the litigation in question was quite evidently the injunction proceeding commenced in 1934 and finally terminated, as our findings show, in November, 1935, several months after the assignment, by the United States Supreme Court's denial of a rehearing on a petition for certiorari. The assignment, then, became effective four years prior to the claim. The consideration asserted is three-fold: petitioner's prior advances to the transferor for family living expenses; her subsequent loans for the same purpose; and a cash payment of $15,000 raised by mortgaging her real property, which was the family home. Respondent's only rejoinders are that these were gifts and not loans; and that the amount has not been precisely established. On both points, respondent's burden of proof must be recognized. Petitioner testified unequivocally that the payments by her were intended and understood to be *122 loans. There was no contrary evidence. Even if we disbelieved what testimony there was, it would not supply the affirmative material necessary to decide a doubtful issue in favor of the party carrying the burden. See Nathan Cohen, 7 T.C. 1002. Similarly, the failure to prove the exact amounts so advanced, though these were asserted to be substantially in excess of the ultimate repayment, might possibly defeat petitioner if she had the burden. But cf. Cohan v. Commissioner (C.C.A., 2nd Cir.), 39 Fed. (2d) 540. But her statements, though general, remain uncontradicted, and respondent has not succeeded in himself proving any figure demonstrating inadequacy. Finally, it is true that the assignment was not made directly to petitioner, and what consideration there was apparently came from her. But we think it reasonable that the intermediate assignment was intended merely as part of one whole transaction and that the actual transfer was from the original taxpayer to petitioner. Respondent apparently agrees, saying in his brief: "Exhibits 1 and 2 should be considered as one transfer, i.e., from the original taxpayer to the petitioner." The facts as so construed *123 seem to us to call for the application of an altogether different set of authorities from the ones upon which respondent relies. All of the cases cited by him, save one, deal with the question we first posed at the outset of the opinion, namely, the income tax liability of the transferor. The one, Van Meter v. Commissioner (C.C.A., 8th Cir.), 61 Fed. (2d) 817, although in fact involving a transferee as well as the transferor, discusses only the same question. Apparently, no transferee defense was raised; certainly no question of a transfer for adequate consideration appears. The present facts thus seem to make this case most comparable to one where a husband sells for cash to his wife an asset subsequently collected and in the meantime applies the cash received to the payment of his obligation to support his family, so that he eventually becomes insolvent; or even to the securing of a loan from some stranger, such as a bank, pledging the asset as security, and similarly dissipating the borrowed funds. In neither case would the ultimate collection by the assignee apparently amount to a preference over subsequent creditors or invalidate the transfer as in violation of *124 creditors' rights, at least unless the amount advanced were grossly incommensurate with the value of the asset. Epstein v. Goldstein (C.C.A., 2nd Cir.), 107 Fed. (2d) 755; National Refining Co. v. United States, supra; Fostoria Milling & Grain Co., 11 B.T.A. 1401. Since for all that appears petitioner obtained an effective title for a valid and adequate consideration, we have to find that under the applicable rules of general law respondent has not sustained his burden of proving such facts as would establish a liability on this petitioner at law or in equity to be answerable for the debts of her transferor. Decision will be entered for the petitioner. Footnotes
1. Internal Revenue Code, section 311↩.